United States District Court
Eastern District of New York                                            1:18-cv-2022

| |
|---|
| Anthony Medina individually and on behalf of all others similarly situated<br><br>                                         Plaintiff<br><br>                 - against -<br><br>That's It Nutrition, LLC<br><br>                                         Defendant |

                                                                        Complaint

The above-named plaintiff individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

1. That's It Nutrition, LLC ("defendant") manufactures and sells snack food products under the brand "That's it" (the "Products").

2. The Products consist of (1) fruit bars, (2) fruit bars with added spicy ingredients, (3) chocolate-covered fruit pieces (4) vegetable bars.

3. The Products have common label representations across the varieties, except for those elements relating to that specific variety, such as the combination of fruits, vegetables and spices.

4. The Products are available in combinations of (1) apple and either another fruit type or a spice and (2) black beans and another vegetable type.

| Fruit Bar | Vegetable Bar |
|---|---|
|  |  |

1

5. The Bars are centered on the presence of the purported represented components, through the following representations:

| Location | Representation |
|---|---|
| Front Label |  |
| Ingredient List |  |

6. The above-referenced representations, including but not limited to the image of a whole apple (or black beans) next to the other component ingredient, "1 apple + 20 blueberries in this fruit bar," "That's it," "All Natural," "No Preservatives," "Raw," promote the products as being directly made from ingredients which have been converted into the final product in a linear process.

7. In other words, the message is that defendant or any manufacturer was responsible for taking the whole intact fruit, washing it, dicing or chopping it, then mashing it together to form the final bar, so that the product can credibly attest that it contains ingredients identified by a collective name.

2

8. The Products other labeling claims affirm the above representations which state "No Purees or Juices," "No Sulfur or Sulfites," "No Sugar Added," "No Preservatives," the "2 ingredient snack," "Just Fruit" and "Fruit is all we use."





9. These representations are intended to distinguish the Products from those fruit-based snacks which have been a staple of American school lunch boxes for decades – the fruit roll-up.

10. The ingredients in the fruit roll-up are fruit purees and juices, corn syrups, various forms of added sugars, pectins, artificial colors and flavors.

11. In contrast, the Products here convey the opposite impression to consumers, who are increasingly avoiding foods which are full of hard to pronounce, processed ingredients.

12. To meet this consumer demand and capture the formed fruit bar market, the ingredient list on the back of the label declares "apples" (Fruit Bars) or "black beans" (Vegetable Bars) followed by the second fruit or vegetable ingredient, i.e., "Blueberries," or "Carrots," or the name of the spice or flavoring.

3

13. This gives a reasonable consumer the impression that the raw material ingredients are, for example, <u>whole</u> apples and <u>whole</u> blueberries, at the point directly prior to their transformation into the Fruit Bar Products.

14. Federal regulations, mirrored by those of this state, require that the name ascribed to an ingredient is a specific name as opposed to a collective name (subject to certain non-applicable exceptions).

15. For example, tomatoes are used in food processing in numerous forms – tomato paste, tomato puree, tomato jam, tomato sauce, tomato powder, diced tomatoes, etc.

16. A typical bottle of tomato sauce lists ingredients such as "Tomato Puree (Water, Tomato Paste), Diced Tomatoes," as opposed to the solitary word "tomatoes."

17. This is because there are differences in the functional, sensory, textural, organoleptic, nutrient and other properties between the specific forms of an ingredient (i.e., tomato paste) and the collective name ("tomato"), which consumers understand as referring to a tomato that has not been processed.

18. By listing ingredients with a collective name, a reasonable consumer gets the impression that the raw material existed in its whole, intact form, which means the products are necessarily fresher because its component ingredients were not made years ago and sat on a warehouse shelf until the time they were used in the products.

19. It is misleading to list ingredients with a collective name because consumers are unable to distinguish the value, quality and nature of the actual ingredients prior to purchase.

20. This is especially relevant and material as consumers increasingly seek products made from whole, unprocessed ingredients as opposed to by-products or processed derivative ingredients.

21. Defendant's Products' listing of ingredients through the collective name of the fruits, vegetables and spices is deceptive, unlawful and misleading to reasonable consumers.

22. This is because defendant does not convert whole, intact fruits or vegetables into the final product.

23. If defendant began the bar production process with whole intact fruits, the ingredient list would indicate the presence of an additional binding ingredient such as a gel, pectin, juice concentrate or syrup, needed to keep the individual fruit matter together.

24. Neither defendant nor any of its manufacturing partner in a desert environment possesses the ability, technology, equipment and expertise to process whole apples, whether delivered from an orchard or cold storage.

25. As a result, the Products contain ingredients which have already been subjected to various levels of processing and transformation such that designating them by their collective name is misleading.

26. It is highly probable that the generic designation of "Apples" encompasses the presence of apple (and other fruit) powder.

27. Apple powder (and fruit powders generally) is used for its functional properties, including (1) binding the components together because it contains pectin, (2) aiding humectancy, (3) increasing fiber content, (4) controlling water activity and (5) assisting with pH regulation.

28. The most common ways to make fruit powder are drum drying and spray drying.

29. In both methods, the input is juice or puree from the subject fruit or vegetable.

30. Drum drying takes the liquid and applies it as a thin layer or sheet over the outer surface of large revolving drums which are heated through steam.

31. This causes the liquid to dry, before grinding or pulverization transforms it into a powder form.

32. Fruit powders made through spray drying typically uses concentrated fruit juice.

33. Juices from concentrates are those which have had their naturally occurring water removed through evaporation or by freezing out the water as ice.

34. Whatever form of juice concentration is applied, it is unlikely that the concentrate will closely resemble the unconcentrated form even when diluted back to its original state.

35. This is the result of the nutrients and flavoring agents being sensitive to processing conditions, which necessitates the addition of flavoring agents.

36. Spray drying brings the concentrated juice it into contact with hot gas, causing moisture to evaporate from the particles, and the dry powder particles are collected.

37. In whatever form of powder production used in the Products, they all involve juice and/or purees.

38. Since fruit powder is derived directly from juices and/or purees, it is deceptive and misleading for the Fruit Bar Products to promote the absence of juices and purees.

39. The Fruit Bar Products incorporate apple pieces (dices or grinds) which have had their water removed through dehydration/evaporation.

40. The inclusion of dried apple (and other fruit/vegetable) ingredients – powders and pieces – means water must be added to reconstitute or rehydrate them, prior to the time the final product is finished.

41. The Products do not indicate the presence of water in the ingredient list, which is misleading.

42. The Products contain implied nutrient content and health claims which are misleading.

43. Defendant's representations have enabled them to command a substantial premium in comparison to alternative bar products which use specific instead of common names to designate their ingredients.

44. Excluding tax, the Products cost no less than $1.99, a premium price compared to other similar products.

## Jurisdiction and Venue

45. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

46. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

47. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

48. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

49. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

50. The classes consist of (1) all consumers in all states and (2) all consumers in New York State who purchased any Products bearing any actionable representations during the statutes of limitation periods.

51. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

52. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

53. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

54. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

55. Plaintiff is an adequate representative because his/her interests do not conflict with other members.

56. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

57. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

58. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

59. Plaintiff seeks class-wide injunctive relief because the practices continue, with the injunctive class maintained as a class action because it meets the same criteria as the non-injunctive class.

Parties

60. Plaintiff is a citizen of Kings County, New York.

61. Defendant is a Delaware limited liability company with its principal office in Los Angeles, California and upon information and belief, no member thereof is a citizen of New York.

62. In 2017, plaintiff purchased the Product(s) for no less than $1.99 per Product(s), excluding tax, at a store within this District.

63. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

### Violations of New York General Business Law §§ 349 & 350

64. Plaintiff repeats and realleges all allegations in foregoing paragraphs.

65. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

66. The representations, descriptions and identifications of the Products and its ingredients are false and misleading for the reasons described herein.

67. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have without getting all they bargained for.

### Breach of Express Warranty and Implied Warranty of Merchantability

68. Plaintiff repeats and realleges all allegations in foregoing paragraphs.

69. Defendant manufactures and sells bar products purporting to consist of only apples, black beans and other whole unprocessed ingredients, the implication being that the ingredients existed in their whole intact form prior to defendant or manufacturing partners transforming them into the products and warranted same to plaintiff and class members

70. Defendant and/or any production partners did not convert the ingredients into the form that they were ultimately incorporated into the Products.

71. Instead, defendant uses various specific processed forms of the various ingredients and denotes them by a collective name, i.e., "apples."

72. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

73. Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

### Fraud

74. Plaintiff repeats and realleges all allegations in foregoing paragraphs.

75. Defendant described and identified the Products in a deceptive way when it could have used non-misleading terms, names or descriptions.

76. Defendant's purpose was to mislead consumers who increasingly seek products with transparent ingredients, which they are familiar with and do not possess complicated-sounding names, often associated with ingredients which have undergone significant processing or alteration prior to its inclusion in the product.

77. Defendant's intent was to distinguish its Products in the marketplace amongst the numerous other companies producing bar products.

78. Plaintiff and class members observed and relied on the representations.

79. Plaintiff and class members paid more than they would have due to the false representations, entitling them to damages.

### Unjust Enrichment

80. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81. Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff, individually and on behalf of all others similarly situated, prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct its practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: April 4, 2018

Respectfully submitted,

Levin-Epstein & Associates, P.C.
/s/Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
spencer@spencersheehan.com

1:18-cv-2022
United States District Court
Eastern District of New York

Anthony Medina individually and on behalf of all others similarly situated

                              Plaintiff

- against -

That's It Nutrition, LLC
                              Defendant

## Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza # 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: April 4, 2018

                                                                           /s/ Joshua Levin-Epstein
                                                                            Joshua Levin-Epstein